CITY OF ELIZABETHTON, TENNESSEE,

*v.*

CRUMLEY BOONE, Trustee of Carter County, et al.

(*Knoxville,* September Term, 1959.)

Opinion filed October 2, 1959.

Rehearing denied December 11, 1959.

GEORGE F. DUGGER, JR., County Attorney, DAVID F. TUCKER, JR., and WALLACE W. TAYLOR, Elizabethton, for appellants.

ROBERT E. BANKS, City Attorney, C. C. STREET, ROY C. NELSON and JOHN L. BOWERS, JR., Elizabethton, for appellee.

618

Mr. Chief Justice Neil delivered the opinion of the Court.

This suit was brought by the City of Elizabethton, Tennessee under the declaratory judgment statutes, sec. 23-1102 *et seq.,* T.C.A. The named defendants are the seven City Commissioners, the Mayor of the city, the City Manager, also Crumley Boone, Trustee of Carter County, the Board of Education of said county (naming them), Carter County and George C. Edens, County Judge of Carter County, Tennessee.

The sole question made on this appeal is whether or not there has been a lawful allocation of funds derived from the issuance and sale of certain school bonds in the amount of $1,354,000, pursuant to sec. 49-711, T.C.A., of the Code Supplement. This Code Section reads, as follows:

"In counties having a city or cities operating schools independent of said county, the trustee of said county shall pay over to the treasurer of said city that amount of said funds which shall bear the same ratio to the entire amount arising from the provisions of this chapter as the average daily attendance of the year ending June 30th next preceding the sale of the bonds of said city or cities bears to the entire average daily attendance of the year ending June 30th next preceding the sale of the bonds of said county; provided, however, that the said funds paid over to the said city

treasurer shall be kept separate from all other funds in the manner and for the purposes herein provided for said county funds to be used. Provided that the governing body of any city may, by ordinance regularly adopted, waive its right to all or a part of any funds due to it under the provisions of this section and return said funds to the trustee of said county for the purposes originally provided."

The bill is elaborate in its averments, reciting the needs for the issuance of the bonds as well as the necessity for a referendum election to the qualified voters of Carter County to approve or disapprove them. The said election, or referendum, was admittedly held according to law and the bonds were approved by an overwhelming majority; 6,239 for and 1,791 against the bonds.

The following averments appear in the complainant's bill and are undisputed. Carter County had a survey made of its 36 schools, 31 of which are elementary schools and 5 high schools. Four of the high schools are in the county proper and the fifth is located in the City of Elizabethton, all being "Class A" or "Class 1" high schools. This survey was made by a Dr. R. N. Finchum, "State Director of School Plans", and he recommended certain new buildings and improvements to others. The estimates made by Dr. Finchum amounted to $3,487,000 which included $607,398 to be allocated to the City of Elizabethton, based upon the average daily attendance in grades 1 through 12 as provided for under Section 49-711, supra. The County Court and the County Board of Education of Carter County approved the Finchum report as shown by the record allocating specific sums of money for each named school, including the City of

Elizabethton. Following the formal official approval of the aforesaid allocation of funds to the several schools, the County Court determined it would not be economically feasible to issue the entire amount of the bonds at one time. The court by formal resolution decided to issue $1,354,000 as a part of the school building program. They were called "Capital Outlay Notes" and were approved by the Finance Committee of the County Court. It is not material whether they are called bonds or notes. All of the property of Carter County was pledged for their final liquidation, both inside the corporation of Elizabethton and in the county proper. It is not disputed that pursuant to the issuance and sale of these notes or bonds the Finance Committee of the Carter County Quarterly made a request of the City of Elizabethton to accept $150,000 in notes and bonds instead of cash. The city agreed and the county went ahead and sold the remaining bonds. Sometime after the check for this issue was received, a member of the County Court raised the question that the City of Elizabethton was not entitled to receive a sum calculated on average daily attendance, grades 1 through 12, but was entitled to a lesser amount. The County Trustee then forwarded to the city a check for $63,656.85 and placed in escrow in a local bank the sum of $168,868.39.

Based upon the foregoing facts the City of Elizabethton filed its original bill contending that it was entitled to the total sum allocated to it according to the Finchum report, and which had been ratified by formal resolution of the Quarterly County Court and expressly approved by the Carter County Board of Education and approved in the referendum election above mentioned.

The defendants filed an answer to the original and amended bill and asked that it be considered as a demurrer as to points of law. The trial judge overruled the demurrers, holding that the City of Elizabethton was entitled to the relief prayed for. We now have the case upon the record and the following assignment of error:

"The learned trial court erred in overruling the ground of defendants' demurrer, which is as follows:

" 'Because the bill shows on its face that the respective rights of the parties are quetsions of law as set out in Code Section 49-711 T.C.A., and that a proper construction of this statute in *pari materia* with other school statutes is determinative of all issues before the Court, and as a matter of law, the proper method of determining the amount of the proceeds of the notes or bonds in question is based upon the average daily attendance of the elementary students in the City of Elizabethton, in relation to the average daily attendance of elementary students outside of the City in the County, and also the average daily attendance of high school students attending City schools, in relation to the average daily attendance of high school students attending county high schools.' "

There are other assignments but the foregoing presents the issue to be decided.

Preliminary to a decision of the case it should be said that the original bill contains many averments which are wholly irrelevant and immaterial to the issue involved, largely argumentative of alleged discrimination in the levying and collection of taxes, and particularly taxes for overall school purposes.

The answer is in kind, disputing the validity of such charges and arguments. Whether the city pays more or less of its fair share in taxes for the erection and maintenance of schools, based upon equitable principles, is wholly foreign to the present issue. The same is true as to taxpayers residing outside the City of Elizabethton.

The defendants concede in their answer that the issue is controlled by a proper interpretation of the statute, i. e. sec. 49-711, T.C.A. They complain, however, in their brief and several assignments of error that the trial court was in error in that the aforesaid section should be construed in *pari materia* with sec. 49-603, T.C.A., which reads, as follows:

"Superintendents of the city schools shall certify to the county superintendent on or before the first day of July of each year, the average daily attendance in the schools of his city, elementary and high schools separately for the previous year."

The insistence is made that such a construction is necessary "to determine the legislative intent." It would unduly prolong this opinion for us to discuss the history of legislation relating to the allocation of funds as between high schools and elementary schools. We think that the legislative intent has been to require distribution on a daily average attendance, grades 1 through 12. See Chapter 53, Section 8, subdivision (c), page 175, Acts of 1957 which is: "An act to provide for the operation of the educational system of the State and its subdivisions, including, but not limited to, capital outlay," etc. Throughout this elaborate and all inclusive statute when there is any reference made to distribution and/or

allocation of school funds it is on the average daily attendance of grades 1 through 12. See Section 15, page 187, and subsection (5), pages 188, 189.

While Chapter 53, Acts of 1957, was repealed by Chapter 14 of the Public Acts of 1959, it was in full force and effect when the City of Elizabethton filed its suit for a declaratory judgment in this case, and the same is true as to T.C.A. sec. 49-711, supra. But the Acts of 1959 carry the same general proviso as to the allocation of school funds as the 1957 Acts. See Sections 5, 6 and 8, Acts of 1959.

But considering there is a substantial difference in thus allocating funds, we think the problem cannot be solved upon any basis other than by express mandate of the statute.

As a part of the general law on the subject of education in our public schools, County Superintendents of public schools and City Superintendents of public schools are required annually to make a sworn statement of the average daily attendance of students in their respective jurisdictions on or by June 30th. The complainant's bill alleges:

"* * * Annexed hereto is the certificate of Professor N. E. Hyder, Superintendent of Schools of Carter County, Tennessee, who certifies that Professor T. A. Dugger, the City Superintendent of the Elizabethton Schools certified to him on or before June 30, 1958, that there were 1711 City students, within the City of Elizabethton, Tennessee, and that such was the average daily attendance in the number of 1711 students as of June 30, 1958. Further the County Superintendent

certified to the Trustee of Carter County, Tennessee, and to the State Department of Education, that there were 8022 county students, grades 1-12 inclusive, as of June 30, 1958, based on the average daily attendance as of that date. These two figures coupled together that is 1711 in the city and 8022 in the county make a total of 9733 students as of June 30, 1958, both in the County and in the City, based on average daily attendance as of said date, June 30, 1958. This certificate further shows that these matters were thus certified to the State Department of Education, as prescribed by law, in order to receive the State School Funds, and/or Capital Outlay Funds as provided by the general law.

"It is alleged that it is on this basis, under T.C.A. sec. 49-711, and all prior Supreme Court decisions that the average school attendance is calculated, as of June 30th preceding the bond sale, and the percentage of students which 1711 City students bears to the total scholastic population of 9733, is 17.57937%, and on the recent bond issue of $1,354,000.00, the City's part on this percent calculates to $232,750.85, after the cost of the bond sale has been deducted. The certificate of the County Superintendent of Schools is filed as Exhibit No. 19, in connection with the average daily attendance as of June 30, 1958."

The record before us fully substantiates the foregoing. Moreover it is upon such facts that the Carter County Court and the County Board of Education formally agreed that this was a proper and lawful allocation of school funds in the case at bar. The opinion of the Court

in *Southern v. Beeler,* 183 Tenn. 272, 195 S.W.2d 857, is not in conflict with this calculation and allocation of funds.

The appeallants' counsel relies almost entirely upon *Guffee v. Crockett,* 204 Tenn. 121, 315 S.W.2d 646, 647, in support of their assignments of error. It is pointed out in the Guffee case:

"The authority of this School District does 'not in any manner apply to the control and management of any county high school' anywhere in the county. Nor does this Special School District pay any part of the costs of building, equipping, maintaining and operating any county high school. The performance of that governmental function is the sole responsibility of the County. All high school students residing in this Special School District attend a high school owned, maintained and operated by Williamson County."

The foregoing quotation from the opinion distinguishes it from the instant case. The trial judge was correct in holding that it had no application to the issue before him. Moreover, this further fact distinguishes it from the case at bar: Williamson County issued its bonds for building and equipping high schools, the proceeds of which could not be used for any other purpose. The Franklin School District operated no high schools, hence was entitled to no part of the proceeds. The bonds which were issued by the County Court of Carter County were for overall school purposes, both for the benefit of elementary schools and high schools, one of which was located in the City of Elizabethton.

The counsel for the City of Elizabethton has filed counter assignments of error complaining that the defendants are estopped from questioning the allocation of these funds based upon the undisputed record. Since we are in agreement with the view of the trial judge as appears in his discussion of the determinative question, we deem it unnecessary to pass upon such assignments. Nor is it necessary to make any reference to the alternate prayer for relief.

The decree of the trial court is in all things affirmed.