Charles H. McCAULEY, d/b/a Charles H. McCauley, Architect,

v.

E. E. HAMPTON et al., in Their Official Capacity as County Board of Educational Commissioners of Carter County, Tennessee.

Civ. A. No. 1494.

United States District Court
E. D. Tennessee,
Northeastern Division.

May 25, 1961.

S. J. Milligan, Greeneville, Tenn., C. C. Street, Elizabethton, Tenn., for plaintiff.

George F. Dugger, Jr., Elizabethton, Tenn., John F. Dugger, Morristown, Tenn., for defendants.

ROBERT L. TAYLOR, Chief Judge.

The defendants were sued in their official capacity as members of the Board of Educational Commissioners of Carter County, Tennessee, and they will hereafter sometimes be referred to as the "Board".

Defendants have moved for a judgment notwithstanding the verdict of the jury, or in the alternative for a new trial.

A brief recitation of the purpose of the suit and some of the things that occurred at the jury trial will give a better understanding of the matters for consideration.

Plaintiff, Charles H. McCauley, doing business as Charles H. McCauley, Architect, sued to recover the sum of $11,969.-08 as balance due for architectural work performed by him on Cloudland High School, Unaka High School and additions to Unaka Elementary School under written contract dated July 7, 1958, between him and the Board.

Plaintiff's drawings and specifications for these buildings were accepted by the State Department of Education of Tennessee and two high school buildings were constructed in accordance with the specifications and drawings of plaintiff. Likewise, the additions and improvements to the Unaka Elementary School were completed. The work was inspected and accepted by the State and by the defendants.

Plaintiff also sued to recover $37,861.-68, which included $1,369.21 advanced by him to the defendants and used for the payment of engineering fees, surveys, etc., for architectural services performed by him on the Hampton and Happy Valley High Schools and the installation of heating systems in the Keenburg, Watauga and Siam Elementary Schools. This work was performed under written contract between the parties dated May 7, 1959.

Plaintiff performed his work as agreed, bids were received and accepted, but the defendants refused to permit the contractor to do the work.

Plaintiff, by amendment, sued for an additional sum of $19,539.80 for preparing plans, recommendations and cost estimates and preliminary studies for a number of other school buildings, but withdrew this claim during the trial of the case.

Defendants denied liability upon the grounds that plaintiff represented that the costs of Cloudland High School would not exceed $8.50 per square foot and that if it did exceed this sum he would not charge anything for his work. The costs amounted to around $9.50 per square

foot. As an additional defense it was claimed that plaintiff's drawings and plans were not suitable for the purposes set forth in the contract.

By counterclaim defendants demanded a judgment against plaintiff for $36,-141.49, the amount paid him under the contracts, and $25,000 as damages for defective work in the construction of Cloudland High School.

Factual issues were submitted to the jury and the jury returned verdicts for the plaintiff for $11,969.08, the amount sued for under the contract dated July 7, 1958, and $37,861.68, including the $1,-369.21 for survey fees, under the contract dated May 7, 1959.

The jury found that the Board did not sustain any damage as the result of any fault upon the part of the plaintiff, and dismissed the counterclaim.

A motion was made by the Board for a directed verdict at the close of the plaintiff's proof and renewed at the close of all the proof. The motion was overruled.

The Board urges the following grounds in support of its motion: (a) That the contract of May 7, 1959 is void because funds were not available for the work provided for under the contract; and (b) that the contract shows upon its face that plaintiff was not to be paid until funds were available, and that funds are not available.

By resolution passed April 21, 1958, the County Court requested the Election Commission to take all steps necessary to hold a referendum authorizing the Quarterly County Court to issue and sell bonds for an over-all county program in the amount of $3,486,787.00 "under Chapter 10 of Tennessee Code Annotated as embodied in Section 7–906 to Section 7–918 and Chapter 131, Public Acts 1945, and Sections 5–1101 to 5–1124, inclusive, of T.C.A., and that said Referendum be held as soon as legally expedient."

The above resolution recites that "Carter County does not have sufficient margin under Section 49–701 within its 10% of total Tax Assessment for School Bonds in relation to its total assessment".

The resolution also recites that it was necessary to pro-rate the school program over a five-year period and that Cloudland High School and Unaka Elementary School would be constructed first in the program. Twenty-four schools are referred to in the resolution.

Counsel for plaintiff say that the bonds authorized in the foregoing resolution were general obligation bonds and that the draftsman of the resolution erroneously recited that they were to be issued under Sections 7–906 to 7–918. These sections authorize the issuance of bonds by the County Court under certain restricted circumstances without a vote of the people.

Counsel for the Board take the position that there was no statutory authority to issue the bonds. This position appears to be based upon the proposition that the referendum that was called in response to a resolution of the County Court was a nullity because the statutes referred to in the resolution do not authorize the issuance of the bonds.

The referendum was held on May 29, 1958 and the question submitted to the voters is as follows:

"School Bonds

"Shall Carter County issue $3,-487,000 School Bonds for the purpose of purchasing grounds and erecting and furnishing school buildings in and for Carter County?"

Six thousand two hundred and thirty-nine voted for the bonds and one thousand seven hundred and ninety-one against.

On December 10, 1958, the County Court passed a resolution authorizing the issuance of $1,354,000 outlay notes for the purpose of paying the cost of constructing and equipping school buildings in Carter County. The resolution recites that the notes were authorized under Sections 5–1031 to 5–1038, T.C.A. The notes were issued in compliance with this resolution.

By resolution passed May 16, 1960, the County Court authorized the issuance of $1,576,000 of funding bonds, the proceeds of which were used to pay off the foregoing outlay notes and other indebtedness.

The resolution recites that these funding bonds were to be issued under Sections 9–1101 to 9–1119, T.C.A., without a referendum.

The draftsman of the previously mentioned resolution that was passed April 21, 1958, erroneously stated that the bonds were to be issued under Sections 7–906 to 7–918, as these sections prohibit the County from issuing bonds in excess of 1½% of the total assessed valuation of all property in the County. The proof shows the assessed valuation of the property of Carter County on the date of the referendum was around $10,000,000.

Counsel for plaintiff states that the draftsman of the resolution erroneously referred to Sections 5–1101 to 5–1124 in the referendum resolution because the bonds contemplated were to be secured by all of the property located in the County, including the property within the corporate limits of Elizabethton.

Section 1104 provides for the issuance of bonds without regard to any limit on indebtedness of the County.

Authority existed under this provision of the statute for the County to issue the bonds, but the governing body of the County submitted the issue to the voters without following the procedure set out in Section 5–1107. This section provides for a referendum if 20% of the qualified electors protest the issuance of the bonds.

Section 5–1119 provides that where a city within a county has a separate and independent school system, bonds for the construction of schools shall be payable from taxes levied upon the property located outside the territorial limits of such incorporated cities or towns.

If the remaining bonds are issued under this provision, only the property located outside of the incorporated town of Elizabethton may be taxed for the payment of principal and interest on the bonds.

The assertion of counsel for plaintiff that it was the intention of the County Court to subject all of the property of the County to taxes for the payment of the bonds is not controverted by counsel for the Board.

Aside from the authority contained in the foregoing sections, there is specific authority for the issuance of bonds under Section 49–201, T.C.A., the pertinent part of which provides as follows:

"The duties of the quarterly county court shall be * * * (5) to submit to the voters of the county, at any regular session, or at any special session called for that purpose, the proposition to issue bonds for the purpose of purchasing grounds, erecting and furnishing school buildings, and, upon the affirmative vote of the majority cast in said election, to issue said bonds in accord therewith."

Counsel for the defendants assert that Sections 49–702 and 49–201 should be considered *in pari materia*. Section 49–702 provides that bonds may not be issued by the county in excess of 10% of the assessed value of the taxable property within the county, unless prior to the sale of the bonds, approval thereof is obtained from the commissioner of education. It is asserted that the legislature intended for this 10% limitation to apply to Section 49–201. We do not agree. The 10% limitation relates to bonds issued by the County Court without the approval of the people. But, there is no statutory limitation on the amount of bonds issued under Section 49–201 if the issue is submitted to a vote of the people. These statutes indicate that the legislature was willing to trust the judgment of the people in the issuance of school bonds without limitation as to the amount, but was not willing to trust the judgment of the County Court without a concurrence of the people.

The County Court passed a resolution on June 11, 1958 to the effect that if the

funds voted in the referendum for the school program were insufficient to complete such program on account of increased costs spread over a five-year period, which the Court estimated would amount to 25%, that it would pledge itself to appropriate sufficient funds "when the assessed valuation of Carter County is sufficient to legally authorize the Quarterly County Court so to do without further referendum to the people." This resolution evinces the great interest of the County Court to carry out the school construction program.

The Supreme Court of Tennessee stated, in the case of City of Elizabethton, Tennessee v. Boone, Trustee of Carter County et al., 329 S.W.2d 832, 833, that Carter County admitted in that proceeding that the referendum authorizing the bonds were held according to law. The admission of the County in that case is inconsistent with the position of the Board in the instant case.

■ If, as the Board contends, the proceeds from the sale of the bonds will not be sufficient to complete the school program, the Board may allocate the funds to the most pressing needs of the program. Baker et al. v. Milam, 186 Tenn. 20, 23, 207 S.W.2d 1014; 49–713 T.C.A.

■ The contract provides that, "No fee is due under this contract until funds become available for construction." The Board claims that the funds are not available, and it is on this quoted language that the Board bases its contention that it is not liable. If this contention is sound, Section 5 of the contract, which provides for partial payments at various stages of the work, becomes meaningless. We think the quoted language means that the money will be paid when the bonds are converted into cash. Funds were available at the time the contract was made as the bond issue had carried and the only thing left for the County Court to do was the ministerial act of issuing the bonds as called for in the referendum. Lamb v. State, Tenn., 338 S.W.2d 584, 587.

The lawsuit was tried on the theory that the funding bonds were a part of the $3,487,000 authorized by the referendum. It is asserted in the briefs of plaintiff that the funding bonds should be charged against the $3,487,000 authorized by the referendum. But, these funding bonds were issued without a referendum. Unless the funding bonds are charged against the amount authorized by the referendum, the County may issue the entire amount of bonds authorized by the referendum.

■ The jury has found that plaintiff performed valuable services for the County in accordance with the provisions of the written contracts with the Board and there is abundant evidence to support the verdict.

Plaintiff is entitled to the amount awarded by the jury, as he performed his work in accordance with his contract.

The Court has this day forwarded to the Clerk an order overruling defendants' motion.