HARRY GUFFEE et al. (Franklin Special School District), Appellees,

*v.*

H. R. CROCKETT, Trustee of Williamson County, et al. (Williamson County Board of Education), Appellants.

(*Nashville,* December Term, 1957.)

Opinion filed July 11, 1958.
Rehearing Denied September 1, 1958.

Tyler Berry and Wirt Courtney, Sr., Franklin, for appellants.

Cecil Sims, Nashville, Earl Beasley, Franklin, for appellees.

Mr. Justice Tomlinson, delivered the opinion of the Court.

A high school owned and operated by Williamson County in its 9th Civil District was destroyed by fire. To replace this high school, it became necessary for Williamson County to issue and sell its school bonds designated "High School Bonds of Williamson County". The

bonds were issued under authority of the provisions of T.C.A. Code Sections 5-1101—5-1124 and 49-701—49-720 construed in *pari materia,* as directed by *Southern v. Beeler,* 183 Tenn. 272, 292, 195 S.W.2d 857. For the payment of these bonds, principal and interest, the County is obligated by the bond issue resolution to levy an *ad valorem* tax upon all taxable property in Williamson County, including all such property within the boundaries of the appellee, Franklin Special School District.

This Franklin Special School District, hereinafter particularly defined, instituted this suit for the purpose of procuring a judicial declaration that it, this Special School District, is entitled to a pro rata share, ($116,000), according to the formula hereinafter stated, of the proceeds derived from the sale of those bonds. This claim is rested upon the fact that a tax is to be levied upon the property situated within this Special School District, as well as within the remainder of Williamson County to retire those bonds, and upon what it conceives the applicable law to be by reason of such tax levy upon the property in such special district. The Chancellor so adjudged. Williamson County has appealed, its insistence being that this Special School District is entitled to no part thereof.

Chapter 563 of the Private Acts of 1949 created in Williamson County a Special School District called ''Franklin Special School District'', the appellee here. Its boundaries are coextensive with the 9th District of the County, and include the Town of Franklin. Its responsibility is to maintain and operate at its expense all public elementary schools for all school children residing in that district to the exclusion of the operation by Williamson County of any elementary school therein. It finances such operation and maintenance by an *ad valorem* tax

levied upon all property within its boundaries, and by an apportionment to it of a pro rata share of all public school funds coming annually into the hands of the Williamson County Trustee. This apportionment is between it and Williamson County. The formula controlling the amount each receives is "in proportion to the average daily attendance in the schools provided for in said Special School District, and in the elementary schools of the remainder of Williamson County".

The authority of this School District does "not in any manner apply to the control and management of any county high school" anywhere in the county. Nor does this Special School District pay any part of the costs of building, equipping, maintaining and operating any county high school. The performance of that governmental function is the sole responsibility of the County. All high school students residing in this Special School District attend a high school owned, maintained and operated by Williamson County.

Since all the above facts were disclosed by the bill and its exhibit, Williamson County demurred. The Chancellor overruled the demurrer, and, in doing so, went further and declared what he conceived to be the rights of the parties.

This decree recites that Williamson County excepted to the action of the Court "in overruling the demurrer", and "on its application" was given twenty days in which to file an answer. The decree did not grant the County leave to rely upon the demurrer in its answer. This answer in reality added nothing to change the legal situation presented by the bill and its exhibit. It did make certain fact averments which the County regarded as

depicting the inequity of the Special School District's claim.

However, this answer commences with the statement "without waiving their demurrer", etc. But the demurrer was not expressly called up preceding, or during, the subsequent hearing on bill and answer. The decree adverse to the County entered on bill and answer, and wherein an appeal was granted, was at a date much more than thirty days after the entry of the decree which overruled the demurrer and declared the rights of the parties.

It is insisted by the Special School District that, because of the situation stated, the decree overruling the demurrer and therein declaring the rights of the parties "was final and cannot be altered on this appeal".

■ It is reasonable to conclude from the record that the Chancellor, at the time he entered the decree overruling the demurrer, etc., did not regard this decree as final. He states in his very carefully considered opinion upon which this first decree is based that the County, if it desires, may have an appeal under Code "Section 27-305". This is the section wherein the Chancellor "may, in his discretion, allow an appeal * * *". The fact that he allowed twenty days for the filing of an answer also indicates that he did not consider his decree as final in the sense of the time within which an appeal, if at all, from his action must be taken.

The question stated arose in *Third National Bank v. Carver*, 31 Tenn.App. 520, 525, 218 S.W.2d 66, 68, and was there settled by that Court in a manner which this Court thought, and thinks, correct. The Court ruled as follows:

"It is said for the bank that the Chancellor overruled the demurrers without granting appellants leave to rely upon the demurrers in their answers and that this ruling was final and it is not now open to review. It is true it was final and binding upon the Chancellor. Upon appeal, however, it is open to review by the appellate courts."

The issue, therefore, between the County and this Special School District will be determined upon its merits.

Quarterly Courts are authorized to issue and sell bonds, Code Section 49-701, known as "School bonds" Section 49-706. The proceeds of sale are to be paid to the Trustee and kept in a separate account known as "special school fund", and used exclusively for the erection, repair, and equipment of school buildings. Section 49-713.

For the payment of said bonds and interest thereon the Court is obligated, with the exception hereafter stated, to levy a tax annually "on all the taxable property of said county". Code Section 49-714. The exception mentioned is that if in such County "there exists any incorporated city or town or special school district * * * which operates its school independently of such county", then the Quarterly Court may in its discretion provide for the levy of a tax for the retirement of said bonds only upon that portion of the taxable property of said county "outside the territorial limits of such incorporated cities or towns or special school districts so independently operating their schools". When the levy of the tax is so restricted, "then no part of the proceeds of such bond issue shall be paid over to any such city or town or special school district or districts". Code Section 49-715.

But in the absence of such exclusion from taxation of the property located in the Special School District the trustee must pay over to such city or town or Special School District as its portion of the proceeds arising from the sale of the bonds "that amount of said funds which shall bear the same ratio to the entire amount arising from the provisions of this chapter as the scholastic population of said respective special school district bears to the entire scholastic population of the county". Code, Sections 49-711 and 49-712.

■ The exemption of property within a special school district operating "its schools independently of such county" from the levy of taxes to retire school bonds authorized by these code sections, unless it receive a pro rata share of the proceeds of the bond sale, must necessarily be ascribed to an intent upon the part of the Legislature to avoid the inequity of double taxation upon property within such special school district. Such an inequity can in no event exist in the present case. This is because Franklin Special School District does not operate, or bear any expense of the operation, of any high school in Williamson County. To the contrary, eligible high school students residing within that special school district attend high schools owned and operated solely by Williamson County without any cost whatever to the Franklin School District or to the attending high school students.

The question here is whether the Franklin Special School District is entitled under Code, Section 49-701 et seq. heretofore mentioned to share in the proceeds of the sale of bonds issued and sold by Williamson County for the purpose of erecting, equipping, etc. a high school building notwithstanding the fact that it, Franklin Special

District, operates no high school independent of Williamson County, or any high school at all, and bears no one of the expenses incurred in the operation of such schools, though the eligible students residing therein attend, and as of right, the Williamson County High Schools.

■ The Franklin Special School District, in support of its insistence that this question must be answered in the affirmative, cites a number of decisions of this Court. All must agree that a decision of an appellate court is in a subsequent case authority only for the controlling question actually presented for decision in the previous case. Each of these cases has been carefully considered with this principle in mind. As to the question actually presented and decided, no one of these cases is, in this Court's opinion, in point. But they are identified for the benefit of any one who desires to read them in connection with consideration of the question in the case at bar. They are *Brittain v. Guthrie,* 164 Tenn. 669, 51 S.W.2d 848; *Southern v. Beeler,* 183 Tenn. 272, 195 S.W. 2d 857; *Bandy v. State ex rel. Board of Education,* 186 Tenn. 11, 207 S.W.2d 1011; *Baker v. Milam,* 186 Tenn. 20, 207 S.W.2d 1014; *Crewse v. Beeler,* 186 Tenn. 475, 212 S.W.2d 39; *Carter County v. City of Elizabethton,* 39 Tenn.App. 685, 287 S.W.2d 934.

The reasoning of appellee, Franklin Special School District, and as held by the Chancellor, is stated in appellee's brief as follows:

"* * * the Chancellor pointed out that the power of the County Court was limited to the issuance and sale of bonds for school purposes, and that after the proceeds were lodged with the Trustee pursuant to the statute, the authority of the County Court ended, and

that it could not direct how the funds were to be expended, * * *."

And subsequently this:

"Appellant completely overlooks, or ignores, the fact that the enabling legislation under which the bonds were authorized, and without which the County was powerless to act, merely provided for the issuance of school bonds and made no provision authorizing the County to classify the bonds to be issued, by description, or by dedication of the proceeds to a particular project. This being true, the description of the bonds by the resolution as 'High School Bonds,' and the attempt to specify the particular use of the funds by the Quarterly Court, did not prevent the bonds from being general school bonds."

Code, Section 49-201 reads as follows:

"The duties of the quarterly court shall be:

* * * * * *

"(9) To provide sufficient funds to erect a suitable building and maintain at least one (1) first-class four (4) year high school according to the provisions of this title."

*State ex rel. Harned v. Meador,* 153 Tenn. 634, 284 S.W. 890, adjudged that it was proper to mandamus the Quarterly Court in order to enforce its compliance with the duty placed upon it by this statute.

Code, Section 49-201(9) and the holding in *State v. Meador, supra,* absolutely compel a rejection of the Chancellor's holding that the Quarterly Court could not issue and sell bonds for the exclusive purpose of building and

maintaining a high school. By the same token, it compels rejection of appellee's insistence that Williamson County Quarterly Court is not authorized "to classify the bonds to be issued * * * or by dedication of the proceeds to a particular project". To adopt the holding of the Chancellor and the insistence of the appellee would be to nullify Code, Section 49-201(9) and the holding in the Meador case. It would place it within the power of the Board of Education, for all practical purposes, to defeat the efforts of the Quarterly Court to comply with the duty required of it by this statute.

It is a fact, as stated by the Chancellor, that the power of the Quarterly Court over the proceeds of the sale of the bonds ended with the lodging of those proceeds with the Trustee of the County. The Quarterly Court, nor a committee thereof, has no authority to supervise the expenditure of the funds coming into the hands of the trustee as proceeds from the sale of county school building bonds. But that is not material. The Trustee is required to keep these proceeds in a special fund and only permit them to be applied to the accomplishment of the declared purpose for which the bonds were sold. Code, Section 49-713.

Much has been said in the briefs and in the oral arguments as to the holding in *McCord v. Marshall County*, 152 Tenn. 675, 280 S.W. 692. The bonds there were also issued under the authority of now Code, Sections 49-701 to 720. Whether the Town of Lewisburg was entitled to share in the proceeds of the sale of those bonds was not the issue in the case. It was a taxpayer's suit, wherein the issuance of the bonds was sought to be enjoined on the ground that these statutes "conferred no power on

the County to issue high school bonds", that is, "to issue bonds" and "designate them 'high school bonds,' and limit the use of the proceeds to high schools". The Court rejected that insistance holding that:

"The county could issue bonds to procure sites and erect buildings for either elementary schools or high schools, or for both purposes. No provision of the act forbids it, and a pro rata distribution of the proceeds to all the schools of the county was not required. 152 Tenn. at page 679, 280 S.W. at page 693.

"It would follow, too, that having sold the bonds in aid of the high school to the exclusion of elementary schools, and described them as high school bonds, the court did not exceed the power conferred by section 8 of the act in levying a tax to meet interest and provide a sinking fund for the bonds." 152 Tenn. at pages 679-680, 280 S.W. at page 693.

The foregoing holding in the McCord case is controlling here. In accordance therewith, this Court is compelled to hold that Williamson County was empowered under Section 49-701 to 720 of the Code to direct an issuance and sale of its bonds in question here for the purpose of acquiring and equipping buildings for high schools to the exclusion of the use of any part of the proceeds for acquiring, etc. of buildings for elementary schools. And this is what Williamson County has done as to the bonds here involved.

If Williamson County issues its bonds for high school buildings to the exclusion of the proceeds for use in its elementary school system, as it may, and, in fact, has here actually done, then it has to follow, in this

Court's opinion, that the issuance is likewise to the exclusion of the proceeds for elementary school buildings in the Franklin Special School District which operates only elementary schools for such of Williamson County's elementary school students as reside within its borders, it having been allowed its specified pro rata part of all funds coming into the Trustee's hands for the operation of such elementary schools.

The division of the proceeds of such a bond issue for school buildings with cities, towns or special school districts which operate their "schools independently of such county" is required. As heretofore observed, the intent of the Legislature in so requiring was to avoid the inequity of double taxation.

The Franklin Special School District does not operate a high school system "independently of" Williamson County. It operates no high school system. It pays no part of the cost of operating the high schools attended by the students residing within its confines. The property, therefore, located within such confines is not subject to the hereinbefore stated double taxation hardship sought to be alleviated by the statutory provision for a division of the bond sale proceeds. It follows, in this Court's opinion, that, in so far as the issuance of the bonds in question is concerned, Franklin Special School District falls neither within the actual meaning nor spirit of the code sections involved. And to permit such a division would amount to an overruling of the McCord case, *supra*, as this Court construes the holding in that case.

For the reasons stated, the decree of the Chancellor will be reversed. A declaratory decree in accordance

herewith will be entered.  All costs in all Courts will be adjudged against Franklin Special School District.

Mr. Chief Justice Neil did not participate in the consideration of this case because of his necessary absence in the performance of other official duties.