BOARD OF EDUCATION OF THE CITY OF ATHENS, Appellant,

*v.*

McMINN COUNTY, J. B. Crabtree, Trustee of McMinn County, and McMinn County Board of Education, Appellees.

369 S. W. 2d 565.

(*Knoxville*, September Term, 1962.)

Opinion filed July 15, 1963.

FRANK N. BRATTON, Athens, for appellant.

JACK JOHNSON, Athens, for appellees.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This action was instituted by the Board of Education of the City of Athens, Tennessee, against McMinn County,

the County Trustee of McMinn County and the McMinn County Board of Education, praying for a declaration and determination of the respective rights of the parties to certain funds in the hands of the County Trustee of McMinn County which were the proceeds of the sale of certain school bonds issued and sold by the governing body of McMinn County pursuant to T.C.A. secs. 49-701 to 49-720, inclusive.

The case was tried in the Chancery Court upon a stipulation of facts agreed to by the parties and filed in the cause. The question presented is whether or not, by virtue of the provisions of T.C.A. sec. 49-711, the appellant, Board of Education of the City of Athens, is entitled to a proportionate part of the proceeds of the sale of these bonds based upon average daily attendance. The Chancellor held that the funds in question were not subject to apportionment by the parties under the terms of T.C.A. sec. 49-711 and dismissed the bill of the Board of Education of the City of Athens. The cause has been duly appealed to this Court.

The stipulation shows that the public schools of McMinn County are operated in the following manner: The Board of Education of the City of Athens operates the four elementary schools, grades one through eight, located in that city. The city of Etowah operates the elementary school in the city of Etowah. The J. L. Cook School, which is within the city of Athens and which has grades one through twelve, is operated by the McMinn County Board of Education and the Board of Education of the City of Athens—the McMinn County Board of Education being responsible for the operation of grades nine through twelve, inclusive, and the Board of Education of the City of Athens being responsible for the oper-

ation of grades one through eight. These two boards jointly share the costs of the maintenance and operation of this school. All other public schools in McMinn County are operated exclusively by the McMinn County Board of Education. This board operates four separate high schools having grades nine through twelve inclusive, namely, the McMinn County High School, which is located within the city of Athens, Calhoun High School, Englewood High School and Etowah High School. The McMinn County Board of Education also operates all of the elementary schools in the county other than those above referred to.

Pursuant to the terms of certain private acts set out in the stipulation, the governing body of McMinn County is the McMinn County Council. On February 8, 1960, the McMinn County Board of Education passed a resolution requesting the McMinn County Council to authorize the McMinn County Board of Education to employ an architectural firm for the purpose of preparing plans and specifications for a proposed new gymnasium and other additions to McMinn County High School. This resolution further provided that such plans and specifications would be made available to the County Council at the time the Board made a request for funds to finance the building.

On the 9th of February, 1960, the McMinn County Council passed a resolution authorizing the McMinn County Board of Education to employ an architectural firm for the purpose of preparing the plans and specifications for a proposed new gymnasium, and other additions to McMinn County High School, and appropriated the necessary funds to carry out this resolution. On April 5, 1960 the McMinn County Board of Education passed

a resolution submitting to the McMinn County Council the figure of $509,600.00 as the amount required for the McMinn County High School project and a school bus garage and maintenance shop.

On June 7, 1960 the McMinn County Council passed a resolution approving the request of the McMinn County Board of Education for funds to make improvements to the McMinn County High School. On August 15, 1960 the McMinn County Council passed resolutions authorizing the issuance of McMinn County School Bonds. These resolutions authorized the issuance of one series of school bonds in the amount of $453,000.00, the latest maturity of the bonds in this series being 1972. A second resolution of the McMinn County Council authorized the issuance of ''School Bonds, Series 'B' 1960'' in the amount of $55,000.00, the latest maturity of this series of bonds being July 1, 1967. The resolutions show that all of these bonds were being issued pursuant to the authority granted by T.C.A. sec. 49-701 and 49-720, inclusive. Each of the resolutions provided that ''there shall be levied upon all the taxable property in said McMinn County, in addition to all other taxes, a direct annual tax'' sufficient to pay all principal and interest accruing on these bonds.

After advertising the sale of these bonds, as provided by T.C.A. sec. 49-709, the bonds were sold to The First National Bank of Memphis. The proceeds of the sale of the bonds were deposited with the County Trustee of McMinn County. He placed the proceeds of the sale of the first series of bonds referred to in an account designated ''1960 McMinn High School Fund.'' The proceeds of the sale of the second series of bonds above referred

to were deposited by the County Trustee in an account designated "1960 School Bus Garage."

On September 13, 1960, by resolution, the McMinn County Council amended the resolutions of August 15, 1960 so as to provide that the first series of bonds be designated as high school bonds instead of school bonds.

On September 15, 1960, the McMinn County Board of Education adopted a resolution designating the fund in the hands of the Trustee arising from the proceeds of the sale of the first series of bonds as the "High School Building Fund" and the proceeds of the sale of the second series of bonds as the "School Bus Garage Building Fund."

In November 1960, after advertising for bids, the Mc-Minn County Board of Education let the contracts for the construction of a gymnasium and class rooms at the McMinn County High School together with the necessary equipment therefor, obligating the entire amount of the McMinn County High School Building Fund for such purposes. At the same time the McMinn County Board of Education entered into a contract to construct and equip a school bus garage, obligating the entire amount of the School Bus Garage Fund. It was further stipulated:

"That the City of Athens does not operate a high school and that approximately sixty-five per cent of the enrollment at McMinn County High School is comprised of pupils living within the confines of the City of Athens.

"That the City Board of Education does not operate a transportation system for its elementary or high school pupils, the sole school transportation system

being operated by the McMinn County Board of Education, and the said County transportation system is used by pupils living within the confines of the City of Athens who attend McMinn County High School.''

██ It was necessary that bonds issued for the purpose of construction of a school bus garage and maintenance shop be issued separately from bonds issued for the purpose of making additions to the McMinn County High School because of the provisions of T.C.A. secs. 49-701 to 49-720, inclusive. T.C.A. sec. 49-713, among other things, provides that the proceeds of the sale of such bonds ''shall be applied exclusively to purchase property for school purposes, to purchase sites for school buildings, to erect or repair school buildings, and to furnish and equip school buildings.''

T.C.A. sec. 49-706 and T.C.A. sec. 49-707 provide that the bonds shall be known as ''school bonds'' and shall be payable in not more than twenty-five years from the date of their issuance.

T.C.A. sec. 49-705 provides, ''Said bonds shall not be issued for any other purpose than herein expressed.''

It is only by virtue of T.C.A. sec. 49-719 that bonds for the purchase of ''school buses and appurtenances necessary to operate them,'' are authorized. This section provides:

''The various counties of the state, through their respective quarterly courts, are authorized and empowered to issue and sell bonds for the purchase of school buses and appurtenances necessary to operate them.

''Notwithstanding the provisions of sec. 49-705, these bonds shall be known as 'school bonds' and they shall

be issued in accordance with the provisions for the issuance of other school bonds, as set out in this chapter. *The provisions of sec. 49-711 providing for the proration of the proceeds of the bonds between county and city school systems shall not apply to bonds issued under authority of this section.* The provisions of sec. 49-707 which requires maturity of school bonds within such a time not to exceed twenty-five (25) years from the date of their issuance shall not apply to bonds issued under the authority of this section, but said bonds issued under this section shall mature within a time or times not to exceed eight (8) years from date of issuance. The county courts are authorized and empowered to set aside into a sinking fund the necessary amounts each year from the regular school transportation allotment to retire said bonds upon their date of maturity. The full faith and credit of the county issuing bonds under the provisions of this section shall be pledged to the retirement of said bonds.'' (Emphasis supplied)

The second resolution of the McMinn County Council of August 15, 1960 followed the provisions of T.C.A. sec. 49-719. It is designated the bonds to be issued as ''school bonds'' and provided that the last of said bonds would mature within a period not exceeding eight years from their date of issuance.

T.C.A. sec. 49-711 provides:

''In counties having a city or cities operating schools independent of said county, the trustee of said county shall pay over to the treasurer of said city that amount of said funds which shall bear the same ratio to the entire amount arising from the provisions of this chap-

ter as the average daily attendance of the year ending June 30th next preceding the sale of the bonds of said city or cities bears to the entire average daily attendance of the year ending June 30th next preceding the sale of the bonds of said county; provided, however, that the said funds paid over to the said city treasurer shall be kept separate from all other funds in the manner and for the purposes herein provided for said county funds to be used. Provided that the governing body of any city may, by ordinance regularly adopted, waive its right to all or a part of any funds due to it under the provisions of this section and return said funds to the trustee of said county for the purposes originally provided.''

No part of the proceeds of the sale of these bonds was turned over to the Board of Education of the City of Athens but the entire proceeds of the sale of both bond issues was committed by the McMinn County Board of Education to the purposes stated.

The question presented is whether or not any of the proceeds of the sale of these bonds should be apportioned between the Board of Education of City of Athens and the McMinn County School Board on the basis of average daily attendance in the schools operated by the respective boards. This, of course, calls for a construction of the statutes governing these matters.

T.C.A. sec. 49-711 was construed by this Court in *Guffee v. Crockett,* 204 Tenn. 121, 315 S.W.2d 646. In that case, a high school in Williamson County having burned, the County issued bonds for the purpose of rebuilding the high school. In that county the Franklin Special School District maintained and operated all public elementary

schools for all school children residing in the district, which district includes the town of Franklin and an area adjacent thereto. The bonds issued by the County in that case were designated ''High School Bonds of Williamson County.'' The question for decision by the Court in *Guffee v. Crockett,* supra, was stated 204 Tenn., at pages 128, 129, 315 S.W.2d, at page 649 of the opinion as follows:

''The question here is whether the Franklin Special School District is entitled under Code, Section 49-701 et seq. heretofore mentioned to share in the proceeds of the sale of bonds issued and sold by Williamson County for the purpose of erecting, equipping, etc. a high school building notwithstanding the fact that it, Franklin Special District, operates no high school independent of Williamson County, or any high school at all, and bears no one of the expenses incurred in the operation of such schools, though the eligible students residing therein attend, and as of right, the Williamson County High Schools.''

In construing T.C.A. secs. 49-711 and 49-712, the Court in that case stated:

''The division of the proceeds of such a bond issue for school buildings with cities, towns or special school districts which operate their 'schools independently of such county' is required. As heretofore observed, the intent of the Legislature in so requiring was to avoid the inequity of double taxation.

''The Franklin Special School District does not operate a high school system 'independently of' Williamson County. It operates no high school system. It pays no part of the cost of operating the high schools attended

by the students residing within its confines. The property, therefore, located within such confines is not subject to the hereinbefore stated double taxation hardship sought to be alleviated by the statutory provision for a division of the bond sale proceeds. It follows, in this Court's opinion, that, in so far as the issuance of the bonds in question is concerned, Franklin Special School District falls neither within the actual meaning nor spirit of the code sections involved.''

*Guffee v. Crockett,* supra, 204 Tenn. page 133, 315 S.W.2d page 651.

The only possible distinction between this case and *Guffee v. Crockett,* supra, is that in *Guffee v. Crockett,* supra, the bond resolution itself designated the bonds being issued as ''High School Bonds of Williamson County'' and in the present case the McMinn County Council, following the language of T.C.A. secs. 49-701 to 49-720, inclusive, designated the bonds as ''School Bonds.''

The appellant, Board of Education of the City of Athens, contends that this fact distinguishes this case from *Guffee v. Crockett,* supra. In its brief, appellant summarizes its contentions in this respect in the following language:

''The bond resolutions passed by the County Council of Appellee, McMinn County, neither attempted nor purported to state within the four corners of the resolutions or the bonds that said bonds were being issued for High School purposes and School Bus Garage purposes. As heretofore pointed out in this Brief, this reiteration simply being made for emphasis, the Appellee, McMinn County, had a choice of either issuing

school bonds generally or school bonds for High School purposes and School Bus Garage purposes, and when the bonds were issued by the resolutions, the Appellee, McMinn County clearly intended to issue school bonds generally."

By making this contention, it is necessarily the position of the appellant that only the bond resolution itself may be looked to to determine the specific purpose for which the bonds were issued and that resolutions of the McMinn County Board of Education specifying in detail the purpose for which the funds were desired and the other resolutions of the McMinn County Council approving the request of the County Board of Education may not be looked to for the purpose of determining the specific purpose for which the proceeds of the sale of the bonds were to be used.

Prior to the sale of these bonds four separate resolutions, two by the McMinn County Board of Education and two by the McMinn County Council, were passed by those bodies, clearly stating the specific purposes for which extraordinary funds were required by the County Board of Education. While the substance of these resolutions has been stated earlier, we point out that on April 5, 1960 the McMinn County Board of Education passed the following resolution:

"It was moved by Mr. List and seconded by Mr. Fugate to submit to the McMinn County Council the figure of $509,600.00 for the project attached, namely, the McMinn County High School Project and School Bus Garage and Maintenance Shop."

On June 7, 1960, by formal resolution of the McMinn County Council, this request for funds by the County

Board of Education was approved. The County Council then set about to raise the funds required for these purposes. These resolutions of the County Council and the County Board of Education left no doubt as to the uses to which the funds were to be put once the bonds were sold. The funds were in fact put to those uses.

■ By the express provisions of T.C.A. sec. 49-719, the proceeds of bonds issued under authority of that section are not to be prorated between county and city school systems and yet the Legislature provided that all bonds issued pursuant to T.C.A. secs. 49-701 to 49-720, inclusive, be designated as ''school bonds'' regardless of whether or not the proceeds of such bonds were to be prorated. Had the Legislature intended that the bond resolution or the bonds themselves show the specific purpose for which such bonds were issued, i. e., whether issued for a purpose that would require proration under T.C.A. sec. 49-711 or for a purpose expressly not requiring proration, then the Legislature would have provided that all bonds issued pursuant to T.C.A. sec. 49-719 carry some designation other than ''school bonds'' in order to distinguish such bonds from ''school bonds'' subject to proration. This the Legislature did not do. We, therefore, hold that it was not the legislative intent that the bond resolution alone be looked to in order to determine whether or not the proceeds of the sale of ''school bonds'' are to be prorated. The county board of education and the governing body of the county may express the purpose for which bonds are issued through official acts of these bodies other than the bond resolution of the governing body of the county.

■ The appellant contends that the action of the County Trustee of McMinn County in placing the proceeds

derived from the bond sales in special accounts designated "1960 McMinn High School Fund" and "1960 School Bus Garage" was without legal effect and in contravention of his duty. In this connection, we call attention to the fact that this Court in *Southern v. Beeler,* 183 Tenn. 272, at page 292, 195 S.W.2d 857, at page 866, stated:

"In considering the intention of the legislature as to the distribution of school funds, we must look to every section of the general school law. In other words, all Code sections dealing with the same subject, must be considered *in pari materia.*"

When so considered, it is seen that T.C.A. sec. 49-206 requires the County Trustee to keep high school funds separate from elementary school funds and to make separate accounting of each such fund. The action of the County Trustee in designating the bond funds as he did was in conformity with the resolutions of the County Council and the County School Board theretofore duly adopted by both of these bodies. His action in this regard also complied with his duty as expressed in this code section. It is not necessary that such funds be designated simply "special school fund" in cases where the specific use of the fund has been fully determined, as in this case, by appropriate resolutions already passed.

■ Appellant further contends that the joint operation of the J. L. Cook School in Athens by the Board of Education of the City of Athens and the County Board of Education with the appellant board being responsible for the operation of grades one through eight and the County Board being responsible for the operation of grades nine through twelve constitutes the operation of

a high school by appellant. We hold that the joint operation of this school on this basis is not the operation of a high school "independent of said county."

As stated at page 680 of the opinion in *McCord v. Marshall County,* 152 Tenn. 675, 280 S.W. 692:

"The act authorizes counties and municipalities to jointly operate schools. This provision is referred to in view of section 7, chapter 60, Acts of 1911, (the original source of T.C.A. sec. 49-711) which required a *pro rata* distribution to municipalities within the county. The consolidation under the later act obviates the necessity of such distribution."

We fully agree with the opinion of the Chancellor wherein he stated:

"It seems abundantly clear that from the very inception of this program, it was the intention of the County Council to issue the bonds in question for the sole purpose of providing additional facilities for the McMinn County High School and to construct a School Bus Garage. Not only was this the intention, but in fact, this was done.

"This being true, the Court is of opinion that the case is governed by the rule so clearly enunciated by the Supreme Court in the case of *Guffee v. Crockett,* 204 Tenn. 121, 315 S.W.2d 646."

Since our conclusions in this case are not based upon any theory that the appellant was estopped by its failure sooner to institute this action, it is unnecessary to discuss the question of estoppel raised by appellant's assignment of error number Six.

In the light of what has been stated we also find it unnecessary to discuss the effect of the resolutions of the County Council and the County Board of Education passed on September 13, 1960 and September 15, 1960 respectively. These resolutions simply reiterate and re-affirm the action that these bodies had taken before the bonds were issued and sold.

The decree of the Chancery Court is in all respects affirmed. The costs are adjudged against the appellant.