STATE OF TENNESSEE ex rel. CARL S. MILLER et al., Appellants, v. E. A. PEACOCK, JR., et al., and Lake County Board of Education, Appellees.
—405 S.W. (2d) 478.

Western Section. April 27, 1965.

Certiorari Denied by Supreme Court August 16, 1965.

Holmes & Holmes, Trenton, for appellants.

John M. Drane, Newbern, William B. Black, Tipton-ville, Heathcock & Cloys, Union City, Robert L. Dobbs, Memphis, for appellees.

CARNEY, J. The complainants below, Carl S. Miller, Samuel Wyatt, Rev. Glynn Harwood, Fred A. Wortman, Billy Shaw, P. E. Leonard, Frank S. Taylor, Carmel Callis, Jackie Wyatt, Ramel Naifeh, William B. Acree, J. G. Riley, Dalton Smith, and R. D. Argo, all citizens, residents and taxpayers of Lake County, Tennessee, filed their original bill in the name of the State of Tennessee

and the Honorable Fleming Hodges, Attorney General for the fourteenth judicial district, against defendant, E. A. Peacock, Jr., Frank S. Markham, Billy Donnell, John Schenk, Clay Wynn, Paul E. Willingham, William D. Keizer as members of the Lake County Board of Education, against Jack F. Haynes, Trustee of Lake County, and against McAdoo Builders Supply Company of Union City, Tennessee, and W. F. Jameson Construction Company of Memphis, Tennessee.

The original bill sought to have declared void contracts executed by the defendant Lake County Board of Education with the W. F. Jameson Construction Company of Memphis, Tennessee, and McAdoo Builders Supply Company of Union City, Tennessee, for the construction and improvement of two school buildings in Tiptonville, Tennessee. The contract with McAdoo Builders Supply Company for additions to the Lincoln School building at a price of $112,817 was approved by the Board of Education on August 20, 1962. The contract with W. F. Jameson Construction Company for the new Lake County High School at a price of $650,914 was approved by the Board of Education of date August 30, 1962. Complainants, as taxpayers of Lake County, filed their original bill on September 7, 1962, to declare the contracts void.

The gravamen of the complaint is that the County Quarterly Court of Lake County had been induced by the defendant Board of Education to authorize the issuance of $840,000 in bonds for school purposes under the authority of T.C.A. Sections 5-1101—1125; that the electorate of Lake County had approved the issuance of the bonds by referendum upon representations by the defendant Board of Education that it would expend the

proceeds from said school bonds on six separate school buildings located both at Tiptonville and at Ridgley; that the school projects and the cost of the same were to be as follows:

(1) Ridgely Colored Elementary—
Cafeteria and Lunchroom..........$ 15,984.00
(2) Lincoln Colored School—Tiptonville
—4 Classrooms, Cafeteria, Lunch-
room, Toilet Facilities............. 65,706.75
(3) New Building for Tiptonville High
School .. ... ................... 526,435.00
(4) Margaret Newton School—8 Class-
room Addition ................... 84,542.00
(5) Lara Kendall Elementary School—
7 Classrooms and Cafeteria Addition 76,710.60
(6) Ridgely Gymnasium Alterations and
Additions ...................... 17,280.00
(7) Estimated Additional Expense...... 53,341.65

TOTAL ...................$840,000.00

Further, the complainants averred that after the bonds had been approved in a referendum, issued by the proper county officials, sold and the proceeds made available to the Lake County Board of Education, the Lake County Board of Education acted arbitrarily and capriciously and in effect misappropriated said funds by seeking to expend nearly all of the $840,000 school bond money on two school buildings in the town of Tiptonville to the detriment of the other buildings which also were to be improved.

The bill charges that the Board of Education had practiced fraud upon the people of Lake County and

particularly the residents of Ridgely, Tennessee, by consolidating the high school at Ridgely with the high school at Tiptonville. The bill prayed for a declaration that the contracts were void and for an injunction prohibiting the Board of Education from continuing with the contracts and enjoining the Trustee from paying out the proceeds of the bond issue under said contracts. No preliminary injunction was sought or issued.

After demurrers were overruled and the defendants answered, a trial was held before the Chancellor on November 18, 1963. At the time of the trial McAdoo Builders Supply Company had completed the Lincoln School Building. It had been accepted by the Board of Education and McAdoo had been paid in full for its contract. Wiseman, Bland & Foster, Architects, of Memphis, Tennessee, had been paid their commissions and fees of $32,000. The Lake County Consolidated High School was under construction by W. F. Jameson Construction Company but was not completed.

The Chancellor held that the actions of the Board of Education of Lake County in awarding the contracts were legal and proper and that the complainants and relators were not entitled to any relief against any of the defendants and dismissed the original bill. From this decree the complainants-relators have appealed.

The defendant Board of Education admitted a change in its original plans for improvement of the six separate school buildings as above set out but justified such change in plans on the grounds that the architects' estimation of the cost of the improvements were short by approximately 25 percent and that when the bids were received it was obvious that all of the improvements

could not be made. The Board of Education felt the Quarterly County Court would not approve an additional bond issue at that time because it had previously turned down a request for one million two hundred fifty thousand dollars to improve the school buildings of Lake County.

Defendants stated that they re-examined the school buildings of Lake County and came to the conclusion that the best interests of the people of Lake County and particularly the children of high school age of Lake County could be served by consolidating the high schools at Ridgely and Tiptonville into a new Lake County Consolidated High School to be built at Tiptonville. This contract was awarded to W. F. Jameson Construction Company at $650,914 instead of $525,435 as earlier planned. They increased the size of the Lincoln School which housed colored students from four classrooms to six including a cafeteria, lunchroom and toilet facilities. This contract was awarded to McAdoo Builders Supply Company at $112,817 instead of $65,706.75 as earlier planned.

After consolidation of grades nine through twelve from Ridgely into the new high school at Tiptonville the Board of Education then routed grades seven and eight from Tiptonville by bus down to Ridgely where they used the old Ridgely High School building. One member of the school board testified that after the issuance of the $840,000 in school bonds the County Quarterly Court had approved another $50,000 school bond issue and that the members of the school board hoped eventually to make still further improvements in the several school buildings of the county as the money became available.

The chronological sequence of events leading up to the issuance of the school bonds is as follows: On May 17, 1961, a special session of the Quarterly County Court of Lake County was called by the chairman, Mr. Paul N. Algee, to deliberate and consider school improvement and construction and a bond issue, if necessary. The following resolution was adopted by the special session of the Quarterly County Court:

"Whereas, the Lake County Board of Education did, at a special meeting on May 11, 1961, pass a motion and make same a recommendation to the Lake County Quarterly Court, which motion and recommendation is as follows:

" 'This is a motion, and if passed, a recommendation to the Lake County Quarterly Court from the Lake County Board of Education meeting this 11th day of May, 1961, in a special call meeting:

The Lake County Board of Education recommends to the Lake County Quarterly Court that the below listed addition, alterations and new construction be performed to the listed building as soon as possible, and that the court take action to secure financing of these projects immediately if possible. Total sum of this recommendation to come to $786,658.35 as listed.

$15,984.00 RIDGELY COLORED ELEMENTARY CAFETERIA & LUNCHROOM 1184 s. f. @ $13.50 without equipment.

$65,706.75 LINCOLN SCHOOL—4 classrooms, cafeteria, lunchroom, toilet facilities 7,685 s. f. @ $8.55 without equipment.

$526,435.00 TIPTONVILLE HIGH SCHOOL NEW BUILDING, 62,300 s. f. @ $8.55 without equipment, in vicinity of present two story T. H. S. building.

$84,542.00 MARGARET NEWTON SCHOOL 8 CLASSROOM ADDITION WITHOUT EQUIPMENT AND WITHOUT CAFETERIA ENLARGEMENT, 9,888 s. f. @ $8.55.

$76,710.60 LARA KENDALL ELEMENTARY SCHOOL 7 CLASSROOMS AND CAFETERIA ADDITION WITHOUT EQUIPMENT. 8,972 s. f. @ $8.55.

$17,280.00 RIDGELY GYMNASIUM ALTERATIONS AND ADDITIONS

$786,658.35 GRAND TOTAL'

Whereas, the public necessity and welfare demanding that such action be taken;

NOW, THEREFORE, BE IT RESOLVED by the Lake County Quarterly Court, meeting in a call session on this the 17th day of May, 1961, at the Courthouse in Tiptonville, Tennessee, that the recommendation as made by the Lake County Board of Education be, and the same is hereby adopted.

Be it further resolved by the Court that the following expenditures be made to effect the following additions, improvements, construction, alteration and repairs:

$15,984.00 RIDGELY COLORED ELEMENTARY CAFETERIA & LUNCHROOM 1184 s. f. @ $13.50 without equipment.

$65,706.75 LINCOLN SCHOOL—4 CLASSROOMS, CAFETERIA, LUNCHROOM, TOILET FACILITIES 7,685 s. f. @ $8.55 without equipment

$526,435.00 TIPTONVILLE HIGH SCHOOL NEW BUILDING, 62,300 s. f. @ $8.55 without equipment in vicinity of present two story T.H.S. building.

$84,542.00 MARGARET NEWTON SCHOOL 8 CLASSROOM ADDITION WITHOUT EQUIPMENT AND WITHOUT CAFETERIA ENLARGEMENT, 9888 s. f. @ $8.55.

$76,710.60 LARA KENDALL ELEMENTARY SCHOOL 7 CLASSROOMS AND CAFETERIA ADDITION WITHOUT EQUIPMENT, 8,972 s. f. @ $8.55.

$17,280.00 RIDGELY GYMNASIUM ALTERATIONS AND ADDITIONS

$786,658.35 GRAND TOTAL

Be it further resolved by the Court that a bond issue in the amount of $836,700.00 be, and the same is hereby authorized to finance the above items of improvement.

Be it further resolved by the Court that the Chairman of said Court and County Attorney be, and they are hereby instructed and authorized to proceed with the preparation of the proper resolutions in regard to the above authorized bond issue and to call a special session if needed of said Quarterly Court for the purpose of adopting the resolutions needed or necessary for said bond issue.

Motion was made by J. R. Holifield and seconded by J. L. Norris, Jr. for the adoption of said resolution.

After discussion, the vote was called and recorded by the Clerk as follows: Amendment to resolution—Motion by Carl Miller, seconded by L. H. Shaw, that the Court defer passage of said resolution to the July term of court.

Roll Call: Walter Delaney, Yea, Jack Donnell, Nay, C. C. Eddlemon, Yea, Robert Henley, Nay, J. R. Holifield, Nay, Ira Holloway, Absent, J. B. Inlow, Yea, Wade Lannom, Absent, Woodrow Leggett, Nay, Carl Miller, Yea, C. W. McGinnis, Yea, Hal McQueen, Nay, J. L. Norris, Jr., Nay, Hubert Perkins, Nay, Frank Provow, Nay, Cornell Rhodes, Nay, L. H. Shaw, Yea, Clint Wadley, Nay.

Yeas: 6

Nays: 10

Motion failed.

Vote called for on Resolution No. One, and recorded by the Clerk as follows: Walter Delaney, Absent, Jack Donnell, Yea, C. C. Eddlemon, Nay, Robert Henley, Yea, J. R. Holifield, Yea, Ira Holloway, Absent, J. B. Inlow, Nay, Wade Lannom, Absent, Woodrow Leggett, Yea, Carl Miller, Absent, C. W. McGinnis, Absent, Hal McQueen, Yea, J. L. Norris, Jr., Yea, Hubert Perkins, Yea, Frank Provo, Yea, Cornell Rhodes, Yea, L. H. Shaw, Absent, Clint Wadley, Yea.

Yeas—10

Nays—2

Motion carried.''

On May 31, 1961, there was another special session of the Quarterly County Court of Lake County called by the chairman and a resolution authorizing the issuance of $840,000 in school bonds "for the purpose of paying the cost of improving and constructing schools in and for said county. * * *" In this resolution there was no allocation of specific amounts for the various buildings to be built or repaired.

On June 21, 1961, another special session of the Quarterly County Court was called by the chairman "for the purpose of taking necessary action on petitions protesting issuing of $840,000 bonds for school purposes pursuant to a resolution of the Quarterly County Court of Lake County adopted and approved May 31, 1961." At this session a resolution was adopted submitting the issuance of bonds to the electorate of Lake County and it was determined that the proposition should be shown on the form of the official ballot to be used in the election as follows:

### "PROPOSITION

Shall Lake County issue not exceeding $840,000 Bonds for the purpose of constructing and improving schools in Lake County, Tennessee?

FOR THE BONDS        ( )

AGAINST THE BONDS ( )"

On July 10, 1961, a special meeting of the Lake County Quarterly Court was called by the chairman to canvass the returns and ballots in the election held on July 6, 1961. The results were: For the Bonds 1889; Against the Bonds 1271. On July 17, 1961, at a regular session of the Lake County Quarterly Court, a resolution was

adopted which recited the regularity of the election held on July 6, 1961, with 1889 votes cast in favor of the issuance of the bonds and 1271 against the issuance of the bonds. A resolution was adopted setting out in detail the maturities of the bonds to be from the year 1965 through the year 1981 and bonds to bear interest not to exceed 5% per annum.

On March 21, 1962, a special meeting of the Lake County Quarterly Court was called by the chairman to discuss the issuance of the school bonds with Mr. Carroll Little, Jr. of the firm of C. H. Little & Company, investment bankers of Jackson, Tennessee, which firm had been selected as the fiscal agent for Lake County in the handling of the sale of the school bond issue. The following motion was adopted:

"IV. Motion to sell bonds.

Motion by Robert Henley seconded by P. P. Wynn that the Lake County Quarterly Court approve the recommendation of the fiscal agent, Mr. Little of C. H. Little Bonding Co., that the County Chairman advertise and sell the said bonds, and that the county chairman invest the money by placing on time deposit until the money is needed for construction of schools.

Roll call

12 Yeas

3 Nays

1 Passed

Motion carried."

As stated above the bids from the several contractors on the six separate school construction projects were

approximately 25% higher than the architects had expected and it became apparent to the school board that it could not do all of the construction it had planned to do within the $840,000 available for such purposes. On August 20, 1962, the school board in a special meeting authorized a negotiated contract with McAdoo Builders Supply Company for additions to the Lincoln School building at a price of $112,817. Also the Board of Education authorized the payment to Wiseman, Bland & Foster, Architects, the sum of $32,000. On August 30, 1962, an adjourned session of the Lake County Board of Education authorized the negotiation of a contract with W. F. Jameson Construction Company for the construction of the new Lake County High School building at a price of $650,914.

Solicitors for the complainants insist that the allocation of the $786,658.35 by the school board to the several school projects contained in its recommendation to the County Court for the issuance of the bonds became a legal and binding allocation upon the school board after the bonds had been approved by the electorate of Lake County. They cite in support of this contention the cases of Guffee v. Crockett, 204 Tenn. 121, 315 S.W.2d 646, and Board of Education of City of Athens v. McMinn County, 212 Tenn. 275, 369 S.W.2d 565.

In Guffee v. Crockett, supra, the Quarterly County Court had ordered the issuance and sale of school bonds designated ''High School Bonds of Williamson County'' to obtain funds with which to replace a county high school destroyed by fire. The bonds had been issued under the authority of T.C.A. Sections 5-1101 through 5-1124 and 49-701 through 49-720 construed in pari materia as directed by Southern v. Beeler, 183 Tenn. 272,

195 S.W.2d 857. The Franklin special school district, of which Harry Guffee, et al were directors, brought suit to obtain a pro rata share of the proceeds of the sale of the bonds because a tax was levied on property within the school district as well as property without the school district to retire the bonds. The Franklin special school district operated no high school and bore none of the expense incident to the operation of a high school. However, eligible high school students living within the Franklin special school district attended Williamson County High School. The Franklin school district operated only elementary schools. Our Tennessee Supreme Court, speaking through Mr. Justice Tomlinson, reversed the decree of the Chancellor and held that the Franklin special school district was not entitled to any portion of the proceeds from the sale of the bonds for the replacement of the high school which had burned. From said opinion we quote as follows:

"Code, Section 49-201(9) and the holding in State v. Meador, supra, absolutely compel a rejection of the Chancellor's holding that the Quarterly Court could not issue and sell bonds for the exclusive purpose of building and maintaining a high school. By the same token, it compels rejection of appellee's insistence that Williamson County Quarterly Court is not authorized 'to classify the bonds to be issued * * * or by dedication of the proceeds to a particular project'. To adopt the holding of the Chancellor and the insistence of the appellee would be to nullify Code, Section 49-201(9) and the holding in the Meador case. It would place it within the power of the Board of Education, for all practical purposes, to defeat the efforts of the Quarterly Court to comply with the duty required of it by this statute.

"It is a fact, as stated by the Chancellor, that the power of the Quarterly Court over the proceeds of the sale of the bonds ended with the lodging of those proceeds with the Trustee of the County. The Quarterly Court, nor a committee thereof, has no authority to supervise the expenditure of the funds coming into the hands of the trustee as proceeds from the sale of county school building bonds. But that is not material. The Trustee is required to keep these proceeds in a special fund and only permit them to be applied to the accomplishment of the declared purpose for which the bonds were sold. Code, Section 49-713."

In the subsequent case of Board of Education of Athens v. McMinn County, et al., 1963, 212 Tenn. 275, 369 S.W.2d 565, the McMinn County Board of Education passed a resolution submitting to the McMinn County Council the sum of $509,600 as the amount required for the McMinn County High School project and a school bus garage and maintenance shop. The McMinn County Council authorized the issuance and sale of two separate series of school bonds, one in the amount of $453,000 and the second series in the amount of $55,000. Subsequently the McMinn County Council amended the resolution so as to designate the first series of bonds to be "high school bonds" instead of "school bonds." The proceeds from the sale of the bonds were deposited with the County Trustee of McMinn County who placed the proceeds of the first series of bonds in an account designated "1960 McMinn High School Fund." The proceeds of the sale of the second series of bonds were deposited by the McMinn County Trustee in an account designated "1960 School Bus Garage."

Later the McMinn County Board of Education let contracts for the construction of a gymnasium and classrooms at the McMinn County High School obligating the entire amount of the 1960 McMinn high school fund for such purpose. At the same time the McMinn County Board of Education entered into a contract to construct and equip a school bus garage obligating the full amount of the school bus garage fund. The Board of Education of the City of Athens operated four elementary schools grades one through eight in the City of Athens along with the J. L. Cook School located in the City of Athens which had grades one through twelve. The Athens Board of Education operated grades one through eight of the J. L. Cook School and grades nine through twelve were operated by the McMinn County Board of Education.

The Board of Education of the City of Athens filed suit for a pro rata share of both bond issues contending that the bonds as actually issued were simply "school bonds." Our Tennessee Supreme Court, speaking through Mr. Justice Holmes, affirmed the action of the Chancellor in denying recovery on the authority of Guffee v. Crockett, 204 Tenn. 121, 315 S.W.2d 646. Justice Holmes made the statement that "the county board of education and the governing body of the county may express the purpose for which bonds are issued through official acts of these bodies other than the bond resolution of the governing body of the county."

■ Thus it appears that under the authority of Guffee v. Crockett, supra, and Board of Education v. McMinn County, supra, the courts will look beyond the designation given the bonds by the Quarterly County Court so as to determine the purpose for which the bonds were issued and sold. In the case at bar it appears without

contradiction that the Quarterly County Court authorized the issuance of $840,000 in school bonds to cover the cost of rebuilding and/or repairing six separate school buildings in Lake County at a total cost of $786,658.35 and that the Quarterly County Court added an additional $53,341.65 to take care of unanticipated expenditures on the entire project.

In the case of Bandy, et al. v. State ex rel. Board of Education of Sullivan County, 1947, 186 Tenn. 11, 207 S.W.2d 1011, opinion by Chief Justice Neil, our Tennessee Supreme Court sustained an injunction bill by the Board of Education of Sullivan County restraining the Quarterly County Court from locating, erecting or contracting to locate, build or erect a school house and enjoining the Quarterly Court from making any expenditure of funds arising from the sale of certain school bonds. The bonds had been originally issued in 1941 for the purpose of building a high school in the ''lower part of the county'' and the resolution provided that the location of the school would be determined by the Board of Education.

The Board of Education selected a site for the school known in the record as the ''Vermont'' site but because of World War II and the shortage of materials the erection of the building was delayed. In April, 1947, the Quarterly County Court realized that the proceeds of the original issue of $185,000 were insufficient to erect and equip a modern school building and issued and sold additional bonds in the amount of $500,000. The Board of Education then decided upon another location for the high school, namely ''the Lynn Garden'' site and in October, 1947, awarded a contract for the construction of the building in the amount of $395,000. The

Quarterly County Court was displeased with the action of the Board in selecting a new site and by resolution undertook to appropriate the proceeds from the two bond issues and appointed a committee to let the contract and supervise the construction of the high school at "Vermont." From the opinion we quote as follows:

"When the county court has once directed the issuance and sale of bonds for school purposes and lodged the proceeds thereof with the trustee, its authority ends, except to audit the accounts of the school board to see that there is no waste of public funds. There is no provision in the constitution giving the quarterly court any authority over public schools and school property. Whatever power it may claim or seek to exercise is derived solely from the legislature. If a power is not given it is said that it does not exist."

In the case of Baker, et al. v. Milam, 1947, 186 Tenn. 20, 207 S.W.2d 1014, the complainants as taxpayers of Decatur County filed their original injunction bill restraining the County Judge from issuing $100,000 in bonds for the erection and equipment of school houses in Decatur County. The Quarterly County Court of Decatur County had passed three resolutions: One authorized the issuance of the bonds; the second designated two school houses to be built, one at Scotts Hill and one at Parsons; the third resolution undertook to designate a building committee with authority to spend all the funds conditioned upon the money being allocated to Scotts Hill and Parsons. The Chancellor decreed that all money arising from the sale of the bonds should be lodged with the County Trustee and kept separate and apart from all other funds and disbursed upon order of the County Board of Education and dismissed complainants' bill.

Chief Justice Neil referred to his opinion in Bandy, et al v. State ex rel. and made the following statement:

"In the instant case the complainants have no authority to maintain this action as a taxpayers' suit to enjoin the issuance of these school bonds. State ex rel. v. Brown, 159 Tenn. 591, 21 S.W.2d 721. When the bonds are issued and sold, and the funds lodged with the county trustee as required by law, the quarterly court has no control over this money; it has no right to draw upon the fund for any purpose. Only the school board is authorized to draw upon this fund, Code, sec. 2566, and this board has the exclusive authority to allocate or prorata the fund for the erection and equipment of schoolhouses at Scotts Hill, Parsons, and/or such other site or sites as it may select."

In the case of Lamb v. State ex rel. Kisabeth, 1960, 207 Tenn. 159, 338 S.W.2d 584, our Tennessee Supreme Court upheld the Chancellor in issuing a mandamus against the Quarterly County Court of Cocke County, Tennessee, requiring the Quarterly County Court to issue and sell school bonds which had been approved by the electorate in a referendum. Chief Justice Burnett referred to the case of Bandy v. State ex rel. with approval and made the following statement: "The way the money is spent, the selection of the sites and the erection of the schools and things of that kind cannot be interfered with by the Quarterly County Court, as it has no authority over the fund."

It becomes unnecessary in the present case to decide whether the Quarterly County Court of Lake County could have earmarked the proceeds of the bond issue in such a manner as to have prevented the County Board of Education from increasing the amount spent on one

or more schools and correspondingly decreasing the amount to be spent on other schools. Suffice it to say it affirmatively appears that in the case at bar the Quarterly County Court made no effort to earmark the proceeds of the bonds either in the resolution calling for the referendum or in the resolution authorizing the sale of the bonds after the referendum.

Under the authorities above quoted we hold that when it became apparent to the County Board of Education that there were insufficient funds from the proceeds of the bonds to make all of the improvements to all of the buildings as originally planned the Board had legal authority to revise its plans and to make the contracts complained of in the present suit. The members of the Board of Education were charged only with the responsibility of using their best judgment in expending the proceeds of the sale of the bonds to the best interest of the school system of Lake County. The evidence does not preponderate against the finding of the Chancellor implicit in his decree that the members of the school board did exercise their best judgment under the circumstances. It may be well argued that the members of the Lake County Board of Education were under a moral duty to discuss with the Quarterly County Court and other interested citizens its change in plans after the sale of the bonds but certainly under the authorities above cited they were under no legal obligation so to do.

The two assignments of error challenging the decree of the Chancellor are respectfully overruled and the decree dismissing complainants' bill will be affirmed at the cost of the appellants.

Avery, P.J. (W.S.), and Bejach, J., concur.