**CITY OF NEWPORT and Board of Education of the City of Newport, Plaintiffs-Appellants,**

v.

**COCKE COUNTY, Tennessee, Victor Webb, Trustee of Cocke County, Tennessee and Board of Education of Cocke County, Tennessee, Defendants-Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Nov. 8, 1985.

Permission to Appeal Denied by Supreme Court, Jan. 27, 1986.

John F. Dugger, Bacon, Dugger, Jessee & Perkins, Morristown, for plaintiffs-appellants.

N. R. Coleman, Jr., and Ronald W. Woods, Milligan, Coleman, Fletcher, Gaby, Kilday & Woods, Greenville, for Board of Educ. of Cocke County.

Fred L. Myers, Jr., Newport, for Cocke County, and Victor Webb, Trustee of Cocke County.

## OPINION

FRANKS, Judge.

The City of Newport's suit for a pro rata share of the proceeds of school improvement bonds issued by Cocke County was dismissed by the chancellor. On appeal, the city insists that it is entitled to 13.43 per cent of the $1,253,000.00 bond proceeds,[1] under the authority of T.C.A., § 49-3-1003.

The pertinent provision of the statute is T.C.A., § 49-3-1003(b)(1):

In counties having a city or cities operating schools independent of said county, the trustee of said county shall pay over to the treasurer of said city that amount of said funds which shall bear the same ratio to the entire amount arising from the provisions of this part as the average daily attendance of the year ending June 30th next preceding the sale of the bonds of said city or cities bears to the entire average daily attendance of the year ending June 30th next preceding the sale of the bonds of said county....

■ The statute's general intent is to assure school systems meeting the criteria a proportional share of bond proceeds. *City of Harriman v. Roane County*, 553 S.W.2d 904 (Tenn.1977). Generally, city school systems are entitled to share in the proceeds of bonds issued by counties for overall school purposes. *City of Elizabethton v. Boone*, 205 Tenn. 617, 329 S.W.2d 832 (1959).

■ A city or special school district which operates no high schools is not entitled to the pro rata distribution of the proceeds of bonds issued by a county for high school purposes. In the leading case of *Guffee v. Crockett*, 204 Tenn. 121, 315 S.W.2d 646 (1958), a special school district claimed entitlement to a pro rata share of bonds issued by Williamson County and

designated as "High School Bonds". The special district included the Town of Franklin and was exclusively responsible for operation of elementary schools within the district. The bonds issued by the county were to be retired by a tax on property located both inside and outside the special district. In holding for the county, the court stressed the legislature's intent that proceeds of bonds be divided between counties and cities or special school districts which operate schools independently of the county in order "to avoid the inequity of double taxation." Because the special district operated no high school system "independently of" the county, the court concluded there was no double taxation.

Material facts in the instant case are not in dispute. The parties stipulated the county operated Cocke County High School, which includes grades nine through twelve, and Cosby School, which includes grades K through twelve. According to testimony by the Cocke County Superintendent of Schools, Cosby School is operated under a "6-6" plan, in which the first six grades are considered elementary grades, and the upper six grades are deemed high school classes.

The City of Newport operates only elementary schools with grades K through eight. The city contends that regular use of the new facilities at Cosby School by seventh and eighth grade students, coupled with the use of the new gymnasium by grades one through six during periods of inclement weather, establishes the bonds were issued to benefit both elementary and high school students. This, the city argues, constitutes funding of school facilities identical to those provided by the city, and the city system is entitled under the statute to a pro rata share of the bond proceeds.

In dismissing the city's claim, the chancellor determined the county issued the bonds "in good faith for the expressed intent and purpose of improving the high school facilities at Cosby School." He further concluded part-time use of the facili-

---

1. The percentage was stipulated and is based on average daily attendance data.

ties by elementary students was "incidental to the main purpose and function" of the facilities and thus did "not constitute ... the funding of similar school facilities as provided by the City of Newport...."

The evidence, in our opinion, does not preponderate against the chancellor's finding that the use of the new Cosby School facilities by elementary students was "incidental" to the facilities' essential nature as a high school gymnasium.

■ In determining the purpose for which bonds are issued, the manifest intent of the county legislative body is accorded some importance. *Bd. of Educ., Athens v. McMinn Co.*, 212 Tenn. 275, 289, 369 S.W.2d 565 (1963). In the instant case, the Cocke County Commission adopted a resolution to issue $1,250,000.00 in bonds "[f]or the purpose of purchasing sites for school buildings and erecting, repairing, furnishing and equipping school buildings comprising a high school gymnasium and classrooms in and for the County...."

A teacher at the Cosby School testified seventh and eighth grade pupils took regularly scheduled physical education classes in the gymnasium and students in grades one through six used the facility "about half the time first and second period...." Seventh and eighth grade students he testified took physical education classes outdoors "most of the time...." Another teacher testified the lower grades used the gymnasium only during inclement weather.

The Cocke County Superintendent of Schools, Charles Lee Seehorn, affirmed that seventh and eighth grade students regularly used the gymnasium two periods per day and seventh and eighth grade students were considered high school students under the school's "6–6" plan.[2] He also testified that 93 per cent of the entire building space for both academic and physical education purposes was used by grades nine through twelve.[3] According to the superintendent, the new classroom space was used exclusively by grades nine through twelve.

■ The chancellor apparently inferred from the county's stated purpose in issuing the bonds and the total use pattern of new facilities that the bonds were issued as "high school bonds", that the proceeds had, in fact, been used for the stated purpose, and the use of the facilities under various circumstances by grades one through eight did not alter the facilities' essential nature as a high school facility. The evidence does not preponderate against these findings. T.R.A.P., Rule 13(d).

■ The applicable law also supports the chancellor's conclusion. In a closely analogous case, *Moody v. Williamson County*, 212 Tenn. 666, 371 S.W.2d 454 (1963), Williamson County operated all public schools in the county and all the public elementary schools save those located in one civil district, which was operated by Franklin Special School District. The county authorized and sold bonds, designated "High School Bonds", in the amount of $110,000.00 for the purpose of constructing a gymnasium at a school site where the county operated both an elementary and a high school. In its suit to obtain a pro rata distribution

2. Appellants rest their argument in part upon T.C.A., §§ 49–6–301 and 49–6–401. Section 49–6–301 defines "elementary schools" as those "serving any combination of grades kindergarten through eight (8)". Section 49–6–301(b) defines "middle schools" as "elementary" schools designed to serve grades five (5) through eight (8) only", while T.C.A., § 49–6–401 defines "junior high schools" as "schools in which are taught any combination of grades seven (7) through grade ten (10)...." Appellants contend that these statutes conclusively define seventh and eighth grade students as elementary, middle school or junior high school students. This does not necessarily imply that the county is duplicating the city system's school services by allowing these students incidental use of the new facilities. Phrased differently, a slight overlap of function between the city's elementary schools and the high school facility involved here does not in itself mean that the county constructed or actually uses the new facilities for purposes of elementary education.

3. Appellants contend that the superintendent's testimony as to usage rates was "based on ... erroneous measurements" and miscalculation because no more than half of the high school students would be taking physical education at any given time.

"under applicable statutes", the special district contended the new gymnasium was used "several hours each week" by seventh and eighth grade students for planned, supervised physical education activity and for extracurricular interscholastic sports. The district further contended that grades one through six used the facility during periods of inclement weather. In holding for the county on these facts, the Supreme Court observed: "[W]e do not think they are such the court could grant the relief prayed for under this bill, which would in effect be to hold the proceeds of these bonds had not been used for high school purposes." *Id.*, at 670, 371 S.W.2d 454. The fact that the elementary school students use the gymnasium, the court concluded, did "not change its essential character as a high school gymnasium." *Id.*

The remaining issues we find to be without merit.

The chancellor's judgment is affirmed and the cause remanded, with the cost incident to the appeal assessed to appellants.

PARROTT, P.J., and SANDERS, J., concur.